**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| Technology Properties Limited, Inc._____Plaintiff,_____v._____Fujitsu Limited, Fujitsu General America, Inc., Fujitsu Computer Products of America, Inc., Fujitsu Computer Systems Corp., Fujitsu Microelectronics America, Inc., Fujitsu Ten Corporation of America, Matsushita Electrical Industrial Co., Ltd., Panasonic Corporation of North America, JVC Americas Corporation, NEC Corporation, NEC Electronics America, Inc., NEC America, Inc., NEC Display Solutions of America, Inc., NEC Solutions America, Inc., NEC Unified Solutions, Inc., Toshiba Corporation, Toshiba America, Inc., Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc. and Toshiba America Consumer Products, LLC.,_____Defendants | 2:05-cv-00494-TJW |

**MOTION OF ARM, LTD. AND ARM, INC. TO INTERVENE**

## **PRELIMINARY STATEMENT**

ARM Ltd. and ARM, Inc. (collectively, "ARM") respectfully submit this motion and supporting brief in support of ARM's Motion to Intervene pursuant to Fed. R. Civ. P. 24 as a party-defendant in this action brought by Technology Properties Limited, Inc. ("TPL"). On July 18, TPL served Infringement Contentions accusing multiple ARM processor cores ("ARM Products") contained within at least four Toshiba chips of infringing United States Patent No. 5,784,584 ("the '584 Patent"). On August 14, 2006, TPL filed a motion to supplement its Infringement Contentions and accused ARM Products contained within at least 9 Toshiba, NEC, and MEI chips of infringing the '584 patent.

By seeking a declaration that the underlying ARM Products infringe the '584 patent and "a permanent injunction," *Complaint*, Prayer for Relief § (d), TPL's lawsuit requests relief that would directly impair or impede ARM's legal rights, capital investments, and business plans as they relate to ARM's ability to sell the accused products to its customers. For chips in which TPL chose to identify ARM Products as the infringing portion, ARM is the party-in-interest. Both Toshiba and NEC have already provided notice to ARM of their positions that TPL's allegations in this case satisfy the requirements of ARM's indemnity obligations <u>requiring</u> ARM's participation.

As explained below, ARM is entitled to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a) because it "claims an interest relating to the property or transaction which is the subject of the action" and is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest." *Id.* In the alternative, this Court should grant ARM permissive intervention pursuant to Fed. R. Civ. P. 24(b). Furthermore,

ARM's involvement in this litigation is a course of conduct recommended by the Federal Circuit under the present circumstances.

ARM's involvement does not expand this case in any fashion.  ARM is simply the real party-in-interest for a subset of the products already accused by TPL.  ARM intends to comply with the Court's docket and discovery orders and the agreements reached between the parties regarding discovery so that no existing party will be prejudiced or delayed by ARM's defense of its rights.  ARM has consulted with the existing parties.  Defendants Toshiba and NEC will not oppose ARM's motion and Toshiba may request separately that the Court grant intervention.  Plaintiff TPL and Defendant MEI have been apprised of the motion but have not yet taken a position on the motion.

## BACKGROUND

ARM is the leading designer of processors used in cellular telephones, hand held computers and numerous other electronic products requiring low power consumption and small size.  ARM processor designs are incorporated into the integrated circuits of products sold all over the world -- including those of the existing defendants.  Currently, there are over five billion such ARM-equipped processors throughout the world.

ARM designs processors that can be embedded into and form a component of larger integrated circuits and licenses these processor designs to other companies that then make and sell larger integrated circuits.  The processor design supplied by ARM is commonly referred to as the ARM "core" or ARM "processor core."

To help maintain its competitive position, ARM invests heavily in research and development – over $100 million in the last year alone.  Indeed, one of ARM's primary research and development sites is located in Austin, TX – a facility intimately involved in the

design and test of the ARM "cores" and which employs over 125 scientists, engineers, and other skilled personnel.

Since ARM's business depends upon the utilization of its processor cores by its customers, ARM is acutely sensitive to accusations of patent infringement. ARM's licensees/customers are justifiably concerned with allegations that their future products might infringe a patent. Thus, it is important for ARM to eliminate promptly any cloud of uncertainty created by allegations of infringement.

On October 24, 2005, TPL filed the present lawsuit against the named defendants. On June 1, 2006, Toshiba provided notice to ARM of Toshiba's position that TPL's allegations in this case satisfy the requirements of ARM's indemnity obligations requiring ARM's participation  Exh. A.  On August 22, 2006, NEC provided notice to ARM of NEC's position that TPL's allegations in this case satisfy the requirements of ARM's indemnity obligations requiring ARM's participation.  Exh. B.

On July 18, 2006, TPL served Infringement Contentions accusing at least four Toshiba chips of infringement for which the identification of allegedly infringing technology was various ARM Products.  On August 14, TPL filed a motion to supplement its prior Infringement Contentions (Dkt. # 96-98) and specifically accused ARM Products in at least 5 different Toshiba chips (Exhs. B-5, B-6, B-8, B-9 [3 chips]), 2 different MEI chips (Exhs. C-2, C-3) and an NEC chip (Exh. A-21).  TPL's contentions are specifically targeted at ARM Products.  TPL identifies nothing unique to the accused chip outside of ARM's Products for these allegations of infringement of the '584 patent.  For these accused chips, there can be no doubt that ARM is the real party-in-interest against whom TPL seeks an infringement determination.

3

**ARGUMENT**

I. <u>**ARM Should Be Allowed To Intervene As Of Right** Pursuant To Fed. R. Civ. P. 24(a)</u>.

Because TPL's claims for relief threaten both ARM's specific products and its substantial capital investment and business plans in the provision of processor cores to other customers, and because ARM Products are specifically targeted by TPL's Infringement Contentions, ARM submits that it is entitled to intervene as a matter of right.[1]

The Fifth Circuit has adopted a four-part test to determine if intervention as of right is warranted: "(1) the applicant must file a timely application; (2) the applicant must claim an interest in the subject matter of the action; (3) the applicant must show that disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties to the litigation." *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 422 (5th Cir. 2002). ARM easily satisfies these four requirements.

    A. <u>**ARM's Motion For Intervention Is Timely**</u>.

ARM's motion to intervene is indisputably timely. To begin with, ARM moved for intervention prior to the August 25, 2006 due date set by this Court for adding additional parties. Additionally, ARM has acted within one month of becoming aware of TPL's Infringement Contentions identifying ARM "cores" as an infringing product and within 11 days of TPL's motion to amend its Infringement Contentions accusing additional ARM cores of infringement. The 5th Circuit has held repeatedly that an intervention in this time frame is

---

[1]    *See* Fed. R. Civ. P. 24(a) ("Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.").

4

timely. *See, e.g.*, *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (intervention timely when made within two months of becoming aware that interests were affected); *Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318, 320-21 (5th Cir. 1986) (intervention timely where movant waited five months to intervene); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977) ("By filing [its] petition less than one month after learning of their interest in this case, the appellants discharged their duty to act quickly.").[2]

Further, no party will be prejudiced by permitting ARM to intervene. ARM has moved to intervene prior to any significant proceedings in the case. The timing of ARM's motion will thus cause no prejudice whatsoever to TPL, which will have ample time to respond to ARM's pleadings.[3] ARM has begun to collect documents for discovery.

By contrast, ARM is threatened with substantial prejudice if its motion is denied. If TPL is successful in obtaining a declaration from this Court that the chips containing the accused ARM Products are infringing, ARM would suffer significant impact to its business. *See infra* Section I.C; *see also Espy*, 18 F.3d at 1207 (finding prejudice to would-be intervenor

---

[2] The Fifth Circuit considers four factors in determining whether a motion to intervene is timely: "(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it sought to intervene; (2) the prejudice that existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) whether unusual circumstances militate for or against a determination that the application is timely." *Heaton*, 297 F.3d at 422-23. These factors are merely "a framework" and "[a] motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness." *John Doe # 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001). In this case, every factor weighs in favor of granting ARM intervention as of right.

[3] *See, e.g.*, *John Doe # 1*, 256 F.3d at 378 (finding no prejudice to existing parties where movant "filed its motion to intervene approximately one month after it became aware of its stake in the [lawsuit] and before trial and any final judgment"); *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125-26 (5th Cir. 1970) (holding intervention as of right to be timely even though intervenor had known of the suit for a year, when "[a]t the time of the intervention, there had been no legally significant proceedings . . . other than completion of discovery and a pretrial").

5

where its "economic interests . . . are at stake" and where it would otherwise be denied "the legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence, and ability to appeal").  Accordingly, ARM's motion is timely.

### B. ARM Has An Interest In The Subject Matter Of This Proceeding.

ARM obviously has a direct and substantial interest in this litigation.  TPL has accused virtually ARM's entire product line of infringing its patents.   ARM's ability to honor commitments to its customers are directly threatened by TPL's Infringement Contentions and Complaint, which seek a declaration that ARM's processor cores are infringing products, as well as an injunction against Toshiba/NEC/MEI chips containing those cores (*Complaint*, Prayer for Relief § (d)).

Toshiba's and NEC's notices that it is their position that TPL's contentions satisfy the prerequisites of ARM's indemnity obligations further establishes ARM's significant interest in the present litigation.  Moreover, TPL effectively concedes that ARM has a substantial interest in this litigation by referencing ARM no fewer than eight times in its Infringement Contentions.  As the Fifth Circuit has observed, the "interest" prong is a means of "'involving as many apparently concerned persons as is compatible with efficiency and due process.'"  *Espy*, 18 F.3d at 1207 (quoting *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992)).  ARM's present position is clearly aligned with those situations in which other districts have found intervention to be appropriate:

> The motion to intervene filed by [a proposed intervenor] will also be granted, because it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product. [The proposed intervenor] correctly claims that it has met the test for intervention as of right under Rule 24(a). Its motion is timely; discovery has not even begun in the case and case management issues are only now being addressed. It has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest. It can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able to make its positions known.

>   Finally, because it is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation.

*Honeywell Int'l Inc. v. Audiovox Comms. Corp.*, 2005 U.S. Dist. LEXIS 22933, *12-13 (D. Del. 2005); see *also LG Elecs., Inc. v. Q-Lity Computer, Inc. v. Asustek Computer, Inc.*, 211 F.R.D. 360 (N.D. Cal. 2002)(permitting intervention where plaintiff's "patent infringement contentions" identified intervenor's products sold to existing defendant as the an infringing product).

>   [An intervenor] has more than a speculative economic interest, as the products that it sells will be at the heart of the litigation …. As [the intervenor] sells the computers that [the plaintiff] alleges infringe its patents, there can be no question that [the intervenor]has a legally protectable interest in the products that [the plaintiff] seeks to place at issue in this patent infringement action.  An applicant demonstrates a significantly protectable interest when the injunctive relief sought by the plaintiffs will have direct, immediate and harmful effects upon its legally protectable interests.

*Id.* at 364-65.

### C. The Court's Decision In This Case May Impair Or Impede ARM's Ability To Protect Its Interests.

Applying the third prong of the intervention-as-of-right test, there is no question that a judgment finding ARM Products as the basis for Toshiba's (or other party's) infringement "may, as a practical matter, impair or impede" ARM's interest if intervention is not allowed. *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996).  While formal collateral estoppel and *res judicata* of an adverse decision would not apply against ARM, TPL would undoubtedly attempt to use such results both in future licensing negotiations and litigation against other ARM licensees, thus severely impairing ARM's ability to license its products without ARM ever having its "fair day in court."  ARM therefore easily satisfies the third requirement for intervention as of right.  *See also*, *LG Elecs.*, 211 F.R.D. at 364-65.

   D.     **The Other Defendants Cannot Adequately Protect ARM's Interests.**

Finally, ARM easily satisfies the "'minimal'" burden of showing "that [its] interest [is] inadequately represented by the existing parties." *Espy*, 18 F.3d at 1207 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). To satisfy the fourth requirement for intervention as of right, ARM merely needs to show that "representation by the existing parties *may* be inadequate." *Heaton*, 297 F.3d at 425 (emphasis added); *see also Trbovich*, 404 U.S. at 538, n.10 ( a proposed intervenor need only establish that "representation of his interest *'may be'* inadequate; and the burden of making that showing should be treated as *minimal*")(emphasis added). As the Infringement Contentions makes clear, TPL's interests are squarely adverse to ARM's interests. Furthermore, while the current defendants may be capable of defending their own products, they are manifestly incapable of independently representing ARM's substantial economic interests in this litigation. For example, ARM's "cores" have both substantial similarities to, and substantial differences from, TPL-accused "cores" made by the current defendants – a situation that clearly may lead to a potential conflict of interest should ARM not be permitted the right to represent itself in this litigation.

In addition, certain infringement defenses may be available to ARM's products that are not available (or not available to the same degree) to other accused products. Indeed, ARM's cores are based on long-known technology that pre-dates the asserted patents. Selection of noninfringement and invalidity theories could clearly differ between the various accused products. Absent intervention, ARM would be at the mercy of the present defendants to present theories favorable to ARM. Since those theories may, in fact, be unfavorable to the present defendants, it is clear that "representation by the existing parties *may* be inadequate." *Heaton*, 297 F.3d at 425 (emphasis added).

8

When different defenses may be available, Federal Circuit precedent requires permission of intervention. *See Israel Bio-Engineering Project v. Amgen, Inc.*, 401 F.3d 1299, 1306 (Fed. Cir. 2005)(reversing the district court's denial of a Rule 24 motion to intervene where the intervening party had a defense not available to other defendants).

Additionally, ARM's financial interests are clearly different from the existing parties. For example, TPL has accused several dozen defendant chips of infringement but only eight chips are accused of infringement based upon the ARM Products. At some point in the litigation, a defendant might be forced to make the business decision to settle. While such a settlement decision might be rational when considering that defendant's business, such settlement might be completely irrational when considering ARM's business interests. Given this indisputable conflict, ARM has the right to be heard in its own name. *See Heaton* 297 F.3d at 425; *Glickman*, 82 F.3d at 110; *Espy*, 18 F.3d at 1208; *John Doe # 1*, 256 F.3d at 381.

In addition, ARM brings to this litigation knowledge gleaned not only through worldwide experience, but also by way of developing sophisticated cores for many, many years. ARM's entire business is processor core designs – not consumer products as is the case with the presently-existing defendants. Thus, ARM has a unique perspective on the technical nuances of both the ARM Products and the prior art. *See, e.g.*, *Nat'l Farm Lines*, 564 F.2d at 383 (noting relevance "that petitioners in intervention possess experience and knowledge in a complex area of business which the [existing party] does not have"). Moreover, ARM is constantly developing and licensing new products to its customers, and TPL's Infringement Contentions are only one salvo in an apparent effort to accuse ARM's "cores" in many products of infringing. TPL has similarly accused many other non-parties both in the U.S. and the rest of the world of infringement resulting from inclusion of ARM Products.

9

Because ARM will apparently be combating TPL's infringement accusations with many customers ARM has particular expertise in the factual and technical issues raised by the TPL's accusations, ARM brings important expertise and perspective to the issues presented. *See, e.g.*, *Sw. Ctr. For Biological Diversity v. Norton*, 268 F.3d 810, 823 (9th Cir. 2001) (noting that intervention as of right was appropriate so that the party could "express their own unique private perspectives" in the litigation).

Because ARM satisfies all four prongs of the Fifth Circuit test, ARM is entitled to intervention as of right under Fed. R. Civ. P. 24(a).

## II. In The Alternative, ARM Satisfies All Of The Requirements For Permissive Intervention Under Fed. R. Civ. P. 24(b).

In the alternative, if the Court does not find that ARM is entitled to intervention as of right, ARM easily satisfies the more liberal standard for permissive intervention. Permissive intervention is allowed when (1) the applicant's motion to intervene is timely, (2) the applicant's claim or defense and the main action have questions of law or fact in common, and (3) the intervention will not cause undue delay or prejudice the rights of individual parties. Fed. R. Civ. P. 24(b).

Here, ARM's request is timely, TPL's Infringement Contentions depend primarily on claim construction which would be common to all accused products, and intervention will conserve judicial resources and allow for the efficient resolution of all related issues in a single proceeding rather than forcing ARM to defend itself in an apparently never-ending set of TPL attempts to litigation against ARM by proxy. In addition, intervention will neither cause undue delay nor prejudice the rights of either TPL or the other defendants. Accordingly, while ARM is plainly entitled to intervention as of right, ARM also satisfies the requirements for permissive intervention under Fed. R. Civ. P. 24(b).

### III. ARM's Intervention Is Precisely The Action That The Federal Circuit Recommends Under The Present Circumstances.

The Federal Circuit specifically identified participation in an existing lawsuit as one method for a party to address allegations of infringement against its products and indemnitees.

> [Defendant] also contends that it could be required to indemnify an entity that potentially could be held liable in a different case for infringing the [asserted] patent. If [Defendant's] interests are affected by a different suit regarding the [asserted] patent, then [Defendant] should join that action as a party, for example, pursuant to Federal Rule of Civil Procedure 19(a)(2)(i).

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001).

The difference between the Federal Circuit's Rule 19 suggestion and ARM's present Rule 24 motion is merely one of labeling, not substance. In the 5th Circuit, such labels are meaningless:

> For starters, a court is not bound by how a party labels its motion. Obviously, "the relief sought, that to be granted, or within the power of the court to grant, should be determined by substance, not a label". As noted, this principle is more than well established. In this regard, courts have applied intervention or joinder standards to motions to amend when plaintiffs have sought, by that means, to add claims of additional parties.

*Effjohn Intl. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003) (internal citations omitted). If anything, the substantive burden is less for a Rule 24 movant than a Rule 19 movant.[4] Additionally, the inclusion of ARM in this litigation does not implicate any of the service, jurisdiction, or venue limitations of Rule 19.

As in *Intellectual Prop. Dev.* cited above, ARM could be required to indemnify a party (Toshiba) to the present litigation. Thus, this Court should permit ARM's attempt to comply

---

[4] Rule 24 permits non-parties to protect their interests while Rule 19 exists largely to give those parties actually named in a lawsuit a potential defense if they can meet their burden of establishing that a party, which has not been sued, is indispensable, thereby making its joinder necessary. See 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1609 (3d ed. 2001).

with the course of action recommended by the Federal Circuit whether labeled as intervention under Rule 24 or joinder under Rules 19 and/or 20.

## **CONCLUSION**

For the foregoing reasons, ARM respectfully requests that the Court grant ARM's Motion to Intervene and (1) allow ARM to intervene as of right pursuant to Fed. R. Civ. P. 24(a); or (2) in the alternative, grant ARM permissive intervention pursuant to Fed. R. Civ. P. 24(b).

Respectfully submitted,


_____/s/_____
Carl R. Roth
Texas Bar No. 901984225
cr@rothfirm.com
Michael C. Smith
Texas Bar No. 900641877
ms@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 North Wellington, Suite 200
P.O. Box 876
Marshall, Texas  75671
Tel: (903) 935-1665
Fax: (903) 935-1797


James H. Wallace, Jr.
DC Bar. No. 016113
jwallace@wrf.com
Gregory E. Lyons
DC Bar. No.  436071
glyons@wrf.com
Kevin P. Anderson
DC Bar. No. 476504
kanderson@wrf.com
WILEY REIN & FIELDING LLP
1776 K Street, N.W.
Washington, D.C. 20006
Tel:  (202) 719-7000
Fax: (202)719-7049

*Counsel for ARM Ltd. and ARM, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served this the 25th day of August, 2006, with a copy of this document via the Court's CM/ECF system.

/s/_____

## CERTIFICATE OF CONFERENCE

The undersigned certifies that Defendants' counsel has conferred with opposing counsel in a good faith attempt to resolve this matter without court intervention.  TPL does not yet take a position and thus the initial presumption at this point is that this Motion may possibly be opposed.

/s/_____