OIPE JUN 17 1997 PATENT & TRADEMARK OFFICE

PATENT #11 / D
Turner B 6/23/97

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | Examiner: D. Eng |
| Charles H. Moore et al. | Group Art Unit: 2315 |
| Serial No. 08/484,935 | Palo Alto, CA |
| Filed: June 7, 1995 | |
| For: HIGH PERFORMANCE MICROPROCESSOR USING INSTRUCTION GROUPS | I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to the Assistant Commissioner for Patents Washington, D.C. 20231, on June 12, 1997. |

AMENDMENT

Date: 6-12-97 By: Patricia K. Parry
Patricia K. Parry

Commissioner of Patents
and Trademarks
Washington, D.C. 20231

RECEIVED JUN 23 97 GROUP 2600

Sir:

In response to the Office Action dated December 12, 1996, please amend the above application as follows:

In the Title:

After "HIGH PERFORMANCE MICROPROCESSOR USING", delete "INSTRUCTION GROUPS" and substitute --INSTRUCTIONS THAT OPERATE WITHIN INSTRUCTION GROUPS--.

In the Specification:

At the beginning of the specification, delete the text of the present Cross Reference to Related Applications, and substitute: --This application is a division of U.S. Application Serial No. 07/389,334, filed Aug. 3, 1989, now U.S. Patent 5,440,749.--.

Page 3, line 7, before "memory", and line 8, after "and the", in each case, delete "dynamic random access".

Page 3, lines 9-13, delete "There is a multiplexing means on the bus between the central processing unit and the dynamic random access memory. The



Exhibit 14

multiplexing means is connected and configured to provide row addresses, column addresses and data on the bus." and substitute: --Instruction fetching means are connected to the bus to fetch instruction groups via the bus from the memory. Each of the instruction groups include at least one instruction that accesses operands or instructions or both. The operands and instructions are located relative to the instruction groups. An instruction register receives a first of the instruction groups from the instruction fetching means. The first of the instruction groups include one or more sequential instructions. Instruction supplying means supplies, in succession from the instruction register, the one or more sequential instructions of the first of the instruction groups to the central processing unit. An instruction decoding means configures the instruction supplying means to select from the instruction register an operand associated with one of the instructions from the first of the instruction groups.--.

D2

Page 3, lines 15-25, delete "system has a means connected to the bus for fetching instructions for the central processing unit on the bus. The means for fetching instructions is configured to fetch multiple sequential instructions in a single memory cycle. In a variation of this aspect of the invention, a programmable read only memory containing instructions for the central processing unit is connected to the bus. The means for fetching instructions includes means for assembling a plurality of instructions from the programmable read only memory and storing the plurality of instructions in the dynamic random access memory." and substitute --has a central processing unit and an instruction register operatively coupled to the central processing unit. An instruction fetching means provides instruction groups to the instruction register wherein certain of the instruction groups include one or more operands or sequential instructions or both. The one or more sequential instructions including at least one instruction that accesses operands or instructions or both being located relative to the instruction groups. An instruction supplying means successively couples the one or more sequential instructions of the certain of the instruction groups to the central processing unit. An instruction decoding means configures the instruction supplying means to select operands from the instruction register associated with particular ones of the sequential instructions.--.

D3

Page 3, lines 28-32, delete "a direct memory access processing unit and a memory connected by a bus. The direct memory access processing unit includes

means for fetching instructions for the central processing unit and for fetching instructions for the direct memory access processing unit on the bus." and substitute --memory, and an instruction register. A method provides instructions from the instruction register to the central processing unit and comprises the steps of:

providing instruction groups to the instruction register from the memory wherein certain of the instruction groups include one or more operands or sequential instructions or both;

supplying, in succession from the instruction register, the one or more sequential instructions of the certain of the instruction groups to the central processing unit; and

selecting an operand from the one of the instruction groups for use by the central processing unit.--.

Delete Page 3, line 33 through Page 7, line 31.

In the Abstract:

Lines 1-2 thereof, delete "A high performance microprocessor system using instruction groups is disclosed herein." and substitute --A high-performance microprocessor system using instructions that access operands and instructions located relative to the current instruction group rather than located relative to the current instruction, as is the convention, is disclosed herein.--.

In the Claims:

Rewrite claims 71-74, 77-78, 91-97 and 99-100 as follows:

71 (Twice Amended). A microprocessor system comprising:

a central processing unit;

memory;

a bus connecting said central processing unit to said memory;

instruction fetching means that are connected to said bus to fetch instruction groups via said bus from said memory, [each] certain of said instruction groups including at least one instruction that accesses operands or instructions or both, said operands and instructions being located relative to said instruction groups;

an instruction register for receiving a first of said instruction groups from said instruction fetching means, said first of said instruction groups including one or more operands or sequential instructions or both;

instruction supplying means for supplying, in succession from said instruction register, said one or more sequential instructions of said first of said instruction groups to said central processing unit;

instruction decoding means for configuring said instruction supplying means to select from said instruction register an operand associated with one of said instructions from said first of said instruction groups.

72(Twice Amended). The microprocessor system of claim 71 wherein said instruction decoding means further includes means, responsive to a SKIP instruction in said instruction register, for configuring said instruction [supplying means to skip one or more of said one or more sequential instructions during transfer thereof] fetching means such that the next instruction group is supplied to the instruction register, and for configuring said instruction supplying means to supply in succession from said instruction register, said one or more sequential instructions, beginning with the first instruction in said instruction register from said next instruction group, to said central processing unit.

73(Twice Amended). The microprocessor system of claim 72 further comprising:

means for determining whether a predefined condition exists within said microprocessor system, and

means for controlling response of said instruction [supplying] decoding means to said SKIP instruction based on existence of said predefined condition.

74(Twice Amended). The microprocessor system of claim 71 further comprising:

a loop counter that is connected to receive a decrement control signal from said instruction decoding means, said instruction decoding means further including means, responsive to a MICROLOOP instruction in said instruction register, [being] configured to supply said decrement control signal to said loop counter [in response to a MICROLOOP instruction within one of said one or more sequential instructions received from said instruction supplying means], said instruction supplying means being configured to supply from said instruction register said one or more sequential

D6

instructions, beginning with the first instruction in said instruction register, from said first of said instruction groups, to said central processing unit.

77(Twice Amended). The microprocessor system of claim 71 wherein said instruction decoding means includes means for supplying control signals to said instruction fetching means such that a subsequent one of said instruction groups is supplied to said instruction register, and for configuring said instruction supplying means to supply to said central processing unit a remainder of [a current one] said first of said instruction groups as [another] said operand.

D7 Sub E2

78(Twice Amended). The microprocessor system of claim 71 wherein said instruction decoding means configures said instruction supplying means to supply to said central processing unit a last byte of [a current] said first of said instruction groups as [another] said operand in response to one of said one or more sequential instructions within said [current one] first of said instruction groups.

Sub E3

D8

91(Amended). A microprocessor [system] comprising:

a central processing unit;

an instruction register operatively coupled to said central processing unit;

instruction fetching means for providing instruction groups to said instruction register wherein certain of said instruction groups include one or more operands or sequential instructions or both; said one or more sequential instructions including at least one instruction that accesses operands or instructions or both , said operands and instructions being located relative to said instruction groups;

instruction supplying means for successively coupling said one or more sequential instructions of said certain of said instruction groups to said central processing unit; and

instruction decoding means for configuring said instruction supplying means to select operands from said instruction register associated with particular ones of said sequential instructions.

92(Amended). The microprocessor [system] of claim 91 wherein said instruction decoding means, upon receiving a SKIP one of said one or more

sequential instructions from a current one of said instruction groups, configures said instruction fetching means to fetch a next one of said instruction groups to said instruction register [from a memory of said microprocessor system], and configures said instruction supplying means to supply a first of one of said one or more sequential instructions.

93(Amended). The microprocessor [system] of claim 92 further including means for determining whether a predefined condition exists within said microprocessor system, and

means for controlling response of said instruction [supplying] decoding means to said SKIP instruction based on existence of said predefined condition.

D8

94(Amended). The microprocessor of claim 91 [wherein said instruction supplying means includes] further comprising a loop counter, said instruction decoding means, responsive to a MICROLOOP instruction within said instruction register, providing a decrement signal to said loop counter [in response to a MICROLOOP instruction within said instruction register], and said instruction supplying means being configured to supply from said instruction register said one or more sequential instructions, beginning with the first instruction in said instruction register, from a current one of said instruction groups, to said central processing unit.

95(Amended). The microprocessor [system] of claim 94 further comprising:

means for determining whether a predefined condition exists within said microprocessor system, and

means for controlling response of said instruction decoding means to said MICROLOOP instruction based on existence of said predefined condition.

25 96(Amended). The microprocessor [system] of claim 20 91 wherein said instruction decoding means includes means, responsive to ones of said sequential instructions of predetermined type, for supplying control signals to said instruction

fetching means such that a subsequent one of said instruction groups is provided to said instruction register.

Sub E4

97(Amended). In a microprocessor system including a central processing unit, memory, and an instruction register, a method for providing instructions from said instruction register to said central processing unit comprising the steps of:

providing instruction groups to said instruction register from said memory wherein certain of said instruction groups include one or more operands or sequential instructions or both, said operands and instructions being located relative to said instruction groups;

supplying, in succession from said instruction register, said one or more sequential instructions of said certain of said instruction groups to said central processing unit; and

selecting[, in accordance with position in said instruction register of one of said instructions of one of said instruction groups,] an operand from said one of said instruction groups for use by said central processing unit.

D8

99(Amended). The microprocessor [system] of claim 91 wherein said instruction decoding means are configured to supply control signals to said instruction fetching means such that a subsequent one of said instruction groups is supplied as an operand in response to one of said one or more sequential instructions.

D9

100(Amended). The microprocessor [system] of claim 96 further comprising means for determining whether a predefined condition exists within said microprocessor system, and means for controlling response of said instruction decoding means to branch-type ones of said instructions based on existence of said predefined condition.

Cancel claim 76.

REMARKS

This amendment responds to the second office action. Claims 71-74, 77 78, 91-97 and 99-100 have been amended and claim 76 has been deleted.

As requested, applicants have updated the status of the parent application. Also pursuant to the Examiner's request, the abstract has been amended to make it more aptly descriptive of the invention. A new title and summary of the invention have also been provided to reflect the claimed invention.

The Examiner has rejected claims 71-90, 91, and 97 under 35 U.S.C. § 112 as being indefinite. The Examiner asserted that it was not recited that the instruction register could hold operands. This is due to a matter of semantics. While the term "instruction" includes the entire encoding (op-code and operand), it is often also used to refer to just the op-code. Similarly, op-code can refer to just the encoding of the functional descriptor (as in the preceding sentence), but it commonly also refers to the entire encoding. Hence, the pending claims 71, 91, and 97 now explicitly refer to the instruction register containing operands, instructions, or both. Applicant believes that this change also clarifies the scope problems referred to by the Examiner in claims 77-79, 81, 88, and 98-99. The text of claim 92 has been changed to more clearly define how instructions are skipped. On the basis of the above changes to the claims and these remarks, the rejection under §112 is believed to be overcome.

The Examiner has rejected claims 71-100 under 35 U.S.C. § 103(a) as being unpatentable over Boufarah in view of May. To more clearly distinguish the instant case over the prior art, text to the effect that:

> ...one or more sequential instructions including at least one instruction that accesses operands or instructions or both located relative to said instruction groups...

has been added to independent claims 71 and 91. Neither Boufarah nor May teach that the operand and instruction references made by instructions are located with regard to the instruction group, rather than the executing instruction. In the microprocessor of this invention, for example, SKIPs are not a given number of instructions, but to the next instruction group, MICROLOOPs are not a given number of instructions, but back to the start of the current instruction group, BRANCHes do not use a given number of operand offset bits, but use the bits

remaining in the instruction group, and are to a destination at the beginning of an instruction group. Some of these examples are discussed more specifically below. Applicants believe the above changes in the pending independent claims 71, 91 and 97, make these claims patentably distinguishable over Boufarah in view of May, and all known prior art, and thus believes that the rejection of these claims has been overcome.

The advantages of accessing operands and instructions relative to instruction groups are several and fall into three groups:

First, the bottleneck in most computer systems is the memory bus (see page 10, line 3-7 of the application). By increasing the instruction bandwidth available over the bus the processor can either a) provide the same performance with lower cost memories (page 10, line 30 to page 11, line 4), or b) provide better performance with more expensive memories. Instruction bandwidth is a matter of reducing the number of instruction bits required to perform the same operation. The stack architecture of the processor promotes this and the processor instructions afforded protection by the pending claims attempt to further reduce the number of op-code bits required. SKIP supplies short branches and MICROLOOP supplies short loops with minimal opcodes. They do this by assuming the next or current instruction group as the destination rather than using additional opcode bits for a destination address. FETCH-VIA-PC (32-bit, page 55, lines 5-25) and LOAD-SHORT-LITERAL (8-bit, page 59, lines 6-33) supply two literal value sizes to minimize wasted bits when storing immediate data. BRANCHES of various types use a variable length operand (page 43, lines 16-24) to use only as many bits as are convenient. The branch address operands also address instruction groups (32-bit machine words) rather than bytes. This allows 4 times the branch distance available from a given number of branch operand bits, thus allowing shorter versions of the branches to be adequate. These compare to typical RISC processors where all instructions are 32-bits regardless of the amount of information needed to actually describe the operation to be performed:

Second, obtaining operands from the instruction stream can be complex and time consuming if the instructions are not all fixed in length. CISC machines (like a Pentium) must determine which bits, within an arbitrary stream of bytes from memory, contain operand bits for the current instruction, and take those bits and

then move them some amount to the right to align the least significant operand bit with the lowest bit on the CPU internal data bus. RISC machines typically have fixed length instructions to solve this problem by always placing the operands in the same bit areas in the instructions (thus moving the bits a fixed amount), but pay the penalty in instruction bandwidth, as described above. The processor in the instant case solves this problem by placing the operands always in the same place within an instruction group so they are in a fixed place. This gives the advantage of simple, fast and efficient access to operands, without the penalty of long instructions. By essentially placing operands and flowing instructions around them, the better code density of short instructions is achieved, and the implementation simplicity of fixed location operands is also achieved.

Third, instruction simplicity reduces the logic required and speeds execution. The processor, for instance, already "knows" how to fetch and execute instruction groups. Implementing SKIP, then, is simply a matter of directing execution to the next instruction group, which the processor already knows how to do. Similarly, for MICROLOOP, the processor already knows how to execute the current instruction group, and simply restarts this process until the count expires. With the addition of one set of conditional logic for SKIPs (to have a full set of conditional branches, page 46, lines 24-26), the processor knows "conditions" and these and other instructions easily become conditional. Again, the same applies to FETCH-VIA-PC, since the processor already knows how to fetch instruction groups, using the next instruction group as a 32-bits operand is easy. And also with LOAD-SHORT-LITERAL, since for branches the processor already knows right-justified operands. These various features synergistically work together to improve performance and reduce processor cost.

Turning to the rejections of certain of the dependent claims, at page 4 of the Office Action, the examiner asserts that May teaches SKIP at the top of column 16, but this is not the case. Examination of the location of the text "SKIP" at the top of column 16 shows that it is a continuation of the text from the bottom of column 15 for the instruction "jump non zero". The text "SKIP" in May in this context is used as descriptive procedural nomenclature as defined in May on column 10 line 61 thus: "The process SKIP terminates with no effect." However, even if the Examiner is correct in asserting that May teaches a SKIP, this does not negate patentability of the

claims as amended because Applicants do not contend that the concept of a "SKIP" is itself unique, as described on page 30, lines 6-9 of this application:

"Other machines (such as the PDP-8 and Data General Nova) provide the ability to skip a single instruction. The microprocessor 50 provides the ability to skip up to three instructions."

Thus, Applicants submit that in the instant case of SKIP, the behavior of SKIP within instruction groups is unique. All known to applicants previous cases of SKIP instructions have skipped a fixed number of instructions, specifically one instruction, as in the cited systems. In the instant case, SKIP skips from zero to three instructions remaining in the instruction group, the number dependent on where the SKIP is located among the four instructions in the instruction group. This feature of the invention is described at page 29, lines 24-35:

"...The SKIP instruction can be located in any of the four byte positions 420 in the 32-bit instruction register 108. If the test is successful [referring to previously discussed conditions on skips], SKIP will jump over the remaining one, two, or three 8-bit instructions in the instruction register 108 and cause the next four instruction group to be loaded into register 108. As shown, the SKIP operation is implemented by resetting the 2-bit microinstruction counter 180 to zero on line 422 and simultaneously latching the next instruction group into register 108. Any instructions following the SKIP in the instruction register are overwritten by the new instructions and not executed. ..."

and at page 46, lines 21-24:

"... SKIP instructions in the microprocessor skip any remaining instructions in a 4-byte instruction group and cause a memory fetch to get the next 4-byte instruction group."

Applicants submit that amended claims 72, 73, 92 and 93 are patentably distinguishable over all known prior art, and thus believes that the rejection of these claims has been overcome with an independent basis for patentability as argued in these remarks.

At page 4 of the Office Action, the examiner asserts that May teaches a system for executing loop instructions, but this is not the case. The referenced text refers to a "jump" instruction and lists uses of a "jump" instruction, two of which are "providing loops, exits from loops". However, the instant case refers to the

conventional definition of a loop instruction which includes a loop counter (a counted loop), something not contemplated by "jump" in the referenced art. Applicants do not content that concept of a counted loop is unique as such. Applicants submit that in the instant case of MICROLOOP, the behavior of MICROLOOP within instruction groups is unique. All known to applicants previous cases of counted loop instructions have required a destination address as an operand within the counted loop instruction. In the instant case, the destination address is assumed to be the first instruction of the current instruction group and is not stored as an operand within the instruction. Thus for any location of a MICROLOOP instruction within a four-byte instruction group, the destination address is the same. Subsequently, in addition to the MICROLOOP instruction, the loop can contain zero, one, two, or three instructions. This feature of the invention is described at page 30, lines 17-28 of the application:

"...MICROLOOP may be placed in the first, second, third or last byte 420 of the instruction register 108. If placed in the first position, execution will just create a delay equal to the number stored in the LOOP COUNTER 92 times the machine cycle. If placed in the second, third, or last byte 420, when the MICROLOOP instruction is executed, ... the 2-bit microinstruction counter is cleared, causing the preceding instructions in the instruction register to be executed again."

Applicants submit that the amended claims 74, 75, 94, and 95 are patentably distinguishable over all known prior art, and thus believes that the rejection of these claims has been overcome with an independent basis for patentability as argued in these remarks.

The examiner has rejected claims 88-90 as being unpatentable over May. While both May and the instant case involve variable length operands, May does not contemplate the variable length operand technique contemplated by the pending claims. May teaches the building of variable length operands four bits at a time by successively executing instructions that each supply an additional four bits. Building the maximum 16-bit operand requires executing at least four instructions. Other processors require changes to mode bits in the op-code to specify the length of the variable length operand. In the instant case, a single op-code is used and the width of a variable length operand depends on where the instruction begins in the current

instruction group. The operand for the instruction includes the bits from the op-code to the last bit in the current instruction group. This feature of the invention is described at page 33, lines 8-28:

"The microprocessor 50 handles operands of 8, 16, or 24 bits using the same op-code. Figure 20 shows the 32-bit instruction register 108 and the 2-bit microinstruction register 180 which selects the 8-bit instruction. Two classes of microprocessor 50 instructions can be greater than 8-bits, JUMP class and IMMEDIATE. A JUMP or IMMEDIATE op-code is 8-bits, but the operand can be 8, 16, or 24 bits long. This magic is possible because operands must be right justified in the instruction register. This means that the least significant bit of the operand is always located in the least significant bit of the instruction register. The microinstruction counter 180 selects which 8-bit instruction to execute. If a JUMP or IMMEDIATE instruction is decoded, the state of the 2-bit microinstruction counter selects the required 8, 16, or 24 bit operand onto the address or data bus. The unselected 8-bit bytes are loaded with zeros by operation of the decoder 440 and gates 442. The advantage of this technique is the saving of a number of op codes required to specify the different operand sizes in other processors."

Applicants submit that claims 88-90 are patentably distinguishable over all known prior art, and thus believes that the rejection of these claims has been overcome with an independent basis for patentability as argued in these remarks.

Since the transitional GATT provisions are applicable to this application, Applicants are paying the fee to remove the finality of the action. A petition and fee for a three month extension of time is also enclosed. Based on the above changes to the claims and remarks, all of the claims in the application are believed to be

patentable over the prior art. This application is believed to be in condition for allowance, and allowance is solicited. Applicants propose to contact the Examiner after the filing of this amendment to see if there are any issues requiring further clarification.

Respectfully submitted,

COOLEY GODWARD LLP

Willis E. Higgins
Reg. No. 23,025

Five Palo Alto Square
Palo Alto, CA 94306-2155
Telephone: (415) 843-5145

UNITED ITES DEPARTMENT OF COMMERCE
Patent a... Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

NM

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO. |
|---|---|---|---|
| 08/484,935 | 06/07/95 | MOORE | C NANO-001/09U |

B3M1/0822

COOLEY GODWARD CASTRO
HUDDLESON AND TATUM
FIVE PALO ALTO SQUARE
3000 EL CAMINO REAL
PALO ALTO CA 94306

| EXAMINER | |
|---|---|
| ENG, D | |
| ART UNIT | PAPER NUMBER |
| 2315 | 10 |

DATE MAILED: 08/22/97

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## OFFICE ACTION SUMMARY

☒ Responsive to communication(s) filed on 6/17/97

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 D.C. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire three month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) 1-75 + 77-100 is/are pending in the application.
Of the above, claim(s) ______ is/are withdrawn from consideration.
☐ Claim(s) ______ is/are allowed.
☒ Claim(s) 1-75 + 77-100 is/are rejected.
☐ Claim(s) ______ is/are objected to.
☐ Claim(s) ______ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.
☐ The drawing(s) filed on ______ is/are objected to by the Examiner.
☐ The proposed drawing correction, filed on ______ is ☐ approved ☐ disapproved.
☐ The specification is objected to by the Examiner.
☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.
☐ received in Application No. (Series Code/Serial Number) ______.
☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: ______.

☐ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of Reference Cited, PTO-892
☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). ______
☐ Interview Summary, PTO-413
☐ Notice of Draftperson's Patent Drawing Review, PTO-948
☐ Notice of Informal Patent Application, PTO-152

Exhibit 15

--SEE OFFICE ACTION ON THE FOLLOWING PAGES--



★ U.S. GPO: 1996-404-495/40517

The amendment filed on June 17 1997 has been entered. Claim 76 has been canceled. The active claims are 71-75 and 77-100.

Claims 71-75 and 77-100 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The scope of meaning of the following claim language is not clear:

1. "Instruction--accesses--instructions" in line 7 of claim 71.

2. "Operands and instructions being located relative to said instruction groups" in line 8 of claim 71.

3. "Supplying means to supply to said central processing unit a remainder of said first of said instruction groups as operands" in claim 77. It is not seen how instructions can be supplied as operands. Other claims have similar defect. See claims 78-79 for examples.

Further with respect to claim 71, function of the instruction register and the instruction supplying means is not clear. Instruction register and instruction supplying means which are commonly for receiving and supplying instructions are recited for receiving and supplying operands.

With respect to claim 72, function of the SKIP instruction is not clear. The instruction fetching means and the supplying means as recited are no different from their normal operation when they are in response to the SKIP instruction. It appears that nothing is being skipped. Description of the MICROLOOP instruction has similar defect. See claim 74 for example.

Scope of claim 73 is not clear. Note that an instruction decoder is commonly for decoding instructions. The claim fails to recite specifically what the decoding means actually does in reesponse to the SKIP instruction based on existence of the predefined condition. No meaningful operation is seen from the claim. Claim 75 has similar defect.

Claims 91-100 have similar defects set forth above.

The text of those sections of Title 35, U.S. Code not included in this action can be found in a prior Office action.

Claims 71-75 and 77-100 are rejected under 35 U.S.C. 103(a) as being unpatentable over Boufarah in view of May.

Detail of the rejection has already been set forth in the last Office action. The detail is incorporated herein by reference thereto.

In the communication filed on June 17 1997, applicants rely on the amendment of the instruction fetching means for patentability. Firstly, it is not quite clear what "--at least one instruction that accesses operands or instructions or both, said operands and instructions being located relative to said instruction group" means. Secondly, it is well know that instructions in all computer programs, including Boufarah's and May's programs, are arranged in sequential order. In other words, all instructions within a computer program are located relative to each other or to each other groups if they are logically grouped. Furthermore, Boufarah also teaches that instructions are stored in a group of 8 in sequential instruction buffer 38 and in a group of 4 in the

targer instruction buffer 36 (see lines 20 of column 7 in Boufarah). An instruction being located relative to an instruction group is not patentable over the applied art.

With respect to the remarks directed to the SKIP and the MICROLOOP instructions, the SKIP and the MICROLOOP instructions are nothing more than a special type of branch instruction. For example, jump from the current instruction to another instruction which is 1 to n instruction length away is no different than skipping the instructions in between. Looping is nothing more than restricting the computer to jump backward instead of foreward. How far the jump is is a matter of design choice.

All the elements recited in the claims can be found in the combined teachings of Boufarah and May. No improvement is seen.

DAVID Y. ENG
PRIMARY EXAMINER
ART UNIT 232

**PATENT** #13/E

OIPE NOV 26 1997 PATENT & TRADEMARK OFFICE

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to the Assistant Commissioner for Patents, Washington, D.C. 20231, on November 21, 1997

Date: 11/21/97 By: Patricia K. Parry
Patricia K. Parry

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | )Examiner: D. Eng |
| Charles H. Moore et al. | )Group Art Unit: 2315 |
| Serial No. 08/484,935 | )Palo Alto, CA |
| Filed: June 7, 1995 | ) |
| For: HIGH PERFORMANCE MICROPROCESSOR USING INSTRUCTION GROUPS | ) |

AMENDMENT

Commissioner of Patents
and Trademarks
Washington, D.C. 20231

Sir:

In response to the Office Action dated August 22, 1997, please amend the above application as follows:

In the Claims:

Rewrite claims 71-75, 78-85, 91-95 and 97-100 as follows:

71 (Three Times Amended). A microprocessor system comprising:

a central processing unit;

memory;

a bus connecting said central processing unit to said memory;





Exhibit 16

instruction fetching means that are connected to said bus to fetch instruction groups via said bus from said memory, certain of said instruction groups including at least one instruction that, when executed, causes an access to an operand or an instruction [accesses operands or instructions] or both, said [operands] operand [and instructions] or instruction being located relative to a boundary of said instruction groups;

an instruction register for receiving a first of said instruction groups from said instruction fetching means, said first of said instruction groups including [one or more operands] an operand or at least two sequential instructions or both;

instruction supplying means for supplying, in succession from said instruction register, said [one or more] operand or sequential instructions of said first of said instruction groups to said central processing unit;

instruction decoding means for configuring said instruction supplying means to select from said instruction register an operand associated with one of said instructions from said first of said instruction groups.

2 72(Three Times Amended). The microprocessor system of claim 1 71 wherein said instruction decoding means further includes means, responsive to a SKIP instruction in said instruction register, for configuring said instruction fetching means such that the next instruction group is supplied to the instruction register, and for configuring said instruction supplying means to supply in succession from said instruction register, said [one or more] sequential instructions, beginning with the first instruction in said instruction register from said next instruction group, to said central processing unit.

3 73(Three Times Amended). The microprocessor system of claim 2 72 further comprising:

means for determining whether a predefined condition exists within said microprocessor system, and

means for controlling response of said instruction decoding means to said SKIP instruction and said predefined condition to execute or not execute said SKIP instruction based on existence of said predefined condition.

4 74(Three Times Amended). The microprocessor system of claim 1 71 further comprising:

a loop counter that is connected to receive a decrement control signal from said instruction decoding means, said instruction decoding means further including means, responsive to a MICROLOOP instruction in said instruction register, configured to supply said decrement control signal to said loop counter, said instruction supplying means being configured to supply from said instruction register said [one or more] sequential instructions, beginning with the first instruction in said instruction register, from said first of said instruction groups, to said central processing unit.

5 75(Twice Amended). The microprocessor system of claim 4 74 further comprising:

means for determining whether a predefined condition exists within said microprocessor system, and

means for controlling response of said instruction decoding means to said MICROLOOP instruction <u>and said predefined condition to execute or not execute said MICROLOOP instruction</u> based on existence of said predefined condition.

---

8 78(Three Times Amended). The microprocessor system of claim 1 71 wherein said instruction decoding means configures said instruction supplying means to supply to said central processing unit a last byte of said first of said instruction groups as said operand in response to one of said [one or more] sequential instructions within said first of said instruction groups.

9 79(Twice Amended). The microprocessor system of claim 1 71 wherein said instruction decoding means are configured to supply control signals to said instruction fetching means such that a subsequent one of said instruction groups is supplied as an operand in response to one of said [one or more] sequential instructions within said first of said instruction groups.

10 80(Twice Amended) The microprocessor system of claim 1 71 wherein said instruction decoding means are configured to supply control signals to said

instruction fetching means such that a subsequent one of said instruction groups supplied to said instruction register is determined in response to a branch-type instruction in said [one or more] sequential instructions within said first of said instruction groups.

9 81(Twice Amended). The microprocessor system of claim 6 77 wherein said instruction decoding means are configured to supply control signals to said instruction fetching means such that a subsequent one of said instruction groups supplied to said instruction register is determined in response to a branch-type instruction in said [one or more] sequential instructions within said first of said instruction groups.

11 82(Twice Amended). The microprocessor system of claim 10 80 further comprising a counter connected to said instruction supplying means, said counter providing a count signal indicative of an instruction of said subsequent one of said instruction groups that is to be provided to said central processing unit by said instruction supplying means, said counter being reset in response to receipt by said instruction decoding means of said branch-type instruction in said [one or more] sequential instructions.

12 83(Twice Amended). The microprocessor system of claim 10 80 further comprising means for determining whether a predefined condition exists within said microprocessor system, and

means for controlling response of said instruction decoding means to said branch-type instruction <u>and said predefined condition to execute or not execute said branch-type instruction</u> based on existence of said predefined condition.

14 84(Twice Amended). The microprocessor system of claim 1 71 wherein said instruction fetching means fetches said [one or more] sequential instructions in parallel for each of said instruction groups in a single memory cycle.

15 85(Twice Amended). The microprocessor system of claim 1 71 further comprising:

memory access testing means for testing said first of said instruction groups to determine if said [one or more] sequential instructions require a memory access; and

if said memory access testing means determine a memory access is not required, then supplying of control signals to said instruction fetching means to fetch the next instruction group during the execution of a current of said instruction groups.

~~91~~ 19 (Twice Amended). A microprocessor comprising:

a central processing unit;

an instruction register operatively coupled to said central processing unit;

instruction fetching means for providing instruction groups to said instruction register wherein certain of said instruction groups include [one or more operands] an operand or at least two sequential instructions or both; said [one or more] operand or sequential instructions including at least one instruction that, when executed, causes an access to an operand or an instruction [accesses operands or instructions] or both , said [operands] operand or [and instructions] instruction being located relative to a boundary of said instruction groups;

instruction supplying means for successively coupling said [one or more] operand or sequential instructions of said certain of said instruction groups to said central processing unit; and

instruction decoding means for configuring said instruction supplying means to select operands from said instruction register associated with particular ones of said sequential instructions.

~~92~~ 21 (Twice Amended). The microprocessor of claim ~~91~~ 20 wherein said instruction decoding means, upon receiving a SKIP one of said [one or more] sequential instructions from a current one of said instruction groups, configures said instruction fetching means to fetch a next one of said instruction groups to said instruction register, and configures said instruction supplying means to supply a first [of] one of said [one or more] sequential instructions.

22 93(Twice Amended). The microprocessor of claim 21 92 further including means for determining whether a predefined condition exists within said microprocessor system, and

means for controlling response of said instruction decoding means to said SKIP instruction and said predefined condition to execute or not execute said SKIP instruction based on existence of said predefined condition.

Sub 1/6 C3

23 94(Twice Amended). The microprocessor of claim 20 91 further comprising a loop counter, said instruction decoding means, responsive to a MICROLOOP instruction within said instruction register, providing a decrement signal to said loop counter, and said instruction supplying means being configured to supply from said instruction register said [one or more] sequential instructions, beginning with the first instruction in said instruction register, from a current one of said instruction groups, to said central processing unit.

24 95(Amended). The microprocessor of claim 23 94 further comprising:

means for determining whether a predefined condition exists within said microprocessor system, and

means for controlling response of said instruction decoding means to said MICROLOOP instruction and said predefined condition to execute or not execute said MICROLOOP instruction based on existence of said predefined condition.

Sub 1/7 C4

29 97(Twice Amended). In a microprocessor system including a central processing unit, memory, and an instruction register, a method for providing instructions from said instruction register to said central processing unit comprising the steps of:

providing instruction groups to said instruction register from said memory wherein certain of said instruction groups include [one or more operands] an operand or at least two sequential instructions or both, said [operands and] operand or instructions being located relative to a boundary of said instruction groups;

supplying, in succession from said instruction register, said [one or more] operand or sequential instructions of said certain of said instruction groups to said central processing unit; and



NANO-001/09US
Resp. to 3rd O.A.

selecting an operand from said one of said instruction groups for use by said central processing unit.

26
98(Amended). The microprocessor of claim 96 25 wherein said instruction decoding means includes means for configuring said instruction supplying means to supply a remainder of a current one of said instruction groups within said instruction register as [one of] said [operands] operand to said central processing unit.

28
99(Twice Amended). The microprocessor of claim 91 20 wherein said instruction decoding means are configured to supply control signals to said instruction fetching means such that a subsequent one of said instruction groups is supplied as an operand in response to one of said [one or more] sequential instructions.

27
100(Twice Amended). The microprocessor of claim 96 25 further comprising means for determining whether a predefined condition exists within said microprocessor system, and means for controlling response of said instruction decoding means to branch-type ones of said instructions and said predefined condition to execute or not execute said branch-type ones of said instructions based on existence of said predefined condition.

REMARKS

Appreciation is expressed for the courteous and helpful telephone interview granted by the Examiner on October 15, 1997 to Applicants' undersigned attorney and to Mr. George Shaw, a technical representative of Patriot Scientific Corporation, assignee of rights in the application. At the interview, the above changes to claim 71 in somewhat different language, the distinctions over the prior art and how those distinctions are defined by the claim language were discussed with the Examiner. It was agreed that these changes and discussion warranted further consideration of the application by the Examiner.

Claims 71-75 and 77-100 were rejected under 35 U.S.C. § 112, ¶ 2 as allegedly indefinite. Claims 71-75 and 77-100 were rejected under 35 U.S.C. § 103 as allegedly unpatentable over Boufarah in view of May, of record. These rejections are believed to be overcome by the above changes to the claims and the following remarks.

In the § 112 rejection, the language:

1. "instruction that accesses operands or instructions" in line 7 of claim 71,

2. "operands and instructions being located relative to said instruction groups" in line 8 of claim 71, and

3. "supplying means to supply to said central processing unit a remainder of said first of said instruction groups as said operand" in claim 77,

and similar language in other claims, is said to not be clear. As pointed out in the interview, in general, operands can be of many types, one aspect of the type determined by the addressing mode used to locate the operand. For instance, there can be register-addressed operands, direct-addressed memory operands, indirect addressed memory operands, or immediate operands. In the instant case, the only type of operands referred to are "immediate operands", that is, operands that are encoded as part of the instruction. On an 80x86 processor, for instance, the instruction MOV BX,#5 has one register operands and one immediate operand, the value 5 being encoded as part of the MOV instruction.

In the instant case, of concern is the manner in which an immediate operand or other instructions are located by an instruction when it is executed. The language "operands and instructions being located relative to said instruction groups" in line 8 of claim 71 and corresponding language in claims 91 and 97 has

been rewritten, both to make the language more definite and to define the invention better over the prior art, to specify more clearly that the operand and instructions are located relative to a boundary of the instruction groups. As pointed out in the interview, by establishing such a predefined location for the operand and instructions, processor construction is simplified and performance is enhanced because instructions and data are always optimally aligned. Operands are right justified within the instruction register so they are already properly aligned for use. Instructions are accessed by the location of the instruction group, thus conserving memory bandwidth by always obtaining a full instruction group of instructions to use, and allowing shorter branch instructions by reducing the number of address bits (to zero in the case of SKIPs and MLOOPs) required to address memory.

Thus from the above remarks the Examiner's concerns as stated: "It is not seen how instructions can be supplied as operands" and "...function of the instruction register and the instruction supplying means is not clear. Instruction register and instruction supplying means which are commonly for receiving and supplying instructions are recited for receiving and supplying operands" are overcome in that the operands of discussion are immediate operands and thus components of the instructions. There is no distinct standard term used in the industry to discuss the part of the instruction that is not the immediate operand, thus the term instruction is used to mean both the entire encoding including the immediate operand or a sub-part of the whole excluding the immediate operand.

As discussed in the interview, to enumerate the cases involved in "instruction that accesses operands or instructions" in line 7 of claim 71 (now reworded as "instruction that, when executed, causes an access to an operand or an instruction"), an instruction in the instruction group, when executed, can:

1. as exemplified by a SKIP instruction, cause access to another instruction or,

2. as exemplified by a LOAD-SHORT-LITERAL instruction, cause access to an operand, or

3. as exemplified by a BRANCH instruction cause access to both by accessing an operand for the destination addressing information and another instruction group as the destination.

The above changes to this language make it clear that execution of the instruction results in these accesses.

As explained in the interview, claim 72 in fact specifies the manner in which a SKIP instruction operates in this invention to always immediately go to the first instruction of the next instruction group, thus not executing, or "skipping", the remainder of the current instruction group. Additionally, this language is further clarified by the amendment to claim 71 specifying instructions being accessed are located relative to a boundary of the instruction groups. Again, this manner of operation for a SKIP instruction is not conventional since a varying number of instructions might be skipped depending upon where the programmer had placed the SKIP within the current instruction group, and no addressing bits are used in the SKIP to vary the number of instructions.

Similarly, claim 74 specifies that a MICROLOOP instruction always goes back to the first instruction in the instruction register (that is, the first instruction of the current group). Similar to SKIP, this operation eliminates the need to specify a destination address for a MICROLOOP and the number of instructions looped depends on where the programmer had placed the MICROLOOP within the current instruction group. In accordance with parent claim 71 as amended, this first instruction is at the boundary of the instruction group.

Claims 73 and 75 have been rewritten to specify that the SKIP or MICROLOOP instructions are executed or not executed based on existence of the predefined condition.

Comparable changes have been made in claims 91-100 as appropriate. The rejection under 35 U.S.C. § 112 is believed to be overcome.

In addition to overcoming the rejection under § 112, the above changes to the claims also differentiate them more clearly over the Boufarah et al. and May references of record, whether considered separately or in combination. Neither Boufarah et al. nor may teach or suggest "operand or instruction being located relative to a boundary of said instruction groups", as now recited in claims 71, 91 and 97, nor the resulting simplification of the instruction set implementation. Neither Boufarah et al. nor May teach or suggest the operation of a SKIP instruction to supply the first instruction from the next instruction group, as recited in claims 72 and 92. Neither Boufarah et al. nor May teach or suggest the operation of a

OIPE
NOV 2 6 1997
JC18
PATENT & TRADEMARK OFFICE

MICROLOOP instruction to supply the first instruction in the instruction register (the first instruction of the current group), as recited in claims 74 and 94. The operation of the SKIP and MICROLOOP instructions in this manner means that no destination addresses for those operations need to be included in the instruction even though the number of instructions skipped or looped can vary (by instruction placement). At least for that reason, the claimed subject matter is far more than a matter of design choice. For these reasons, the rejection under § 103 is believed to be overcome.

Based on the above changes to the claims and remarks, all of the claims in the application are believed to be patentable over the prior art. This application is believed to be in condition for allowance, and allowance is solicited.

Respectfully submitted,

COOLEY GODWARD LLP

Willis E. Higgins
Reg. No. 23,025

Five Palo Alto Square
Palo Alto, CA 94306-2155
Telephone: (650) 843-5145

PATENT

I hereby certify that this correspondence is being ~~deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to~~ faxed to Examiner David Eng at the Assistant Commissioner for Patents, Washington, D.C. 20231, on February 5, 1998

Date: 2/5/98 By: Patricia K. Parry / Patricia K. Parry

Fax #: 703-308-5356 Time: 9:00 AM

#14/7

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | )Examiner: D. Eng |
| Charles H. Moore et al. | )Group Art Unit: 2315 |
| Serial No. 08/484,935 | )Palo Alto, CA |
| Filed: June 7, 1995 | ) |
| For: HIGH PERFORMANCE MICROPROCESSOR USING INSTRUCTION GROUPS | ) |

OFFICIAL 2/12/98

FAX RECEIVED FEB 6 1998 GROUP 2300

SUPPLEMENTAL AMENDMENT

Commissioner of Patents
and Trademarks
Washington, D.C. 20231

Sir:

In response to a telephone interview with the Examiner on January 29 and February 2 1998, please amend the above application as follows:

In the Claims:

Rewrite claims 71, 74, 82, 86, 87, 91, 94 and 97 as follows:

1 71 (Four Times Amended). A microprocessor system comprising:

a central processing unit;

memory;

a bus connecting said central processing unit to said memory;

71



NANO-001/09US
Supp. Resp. to 3rd O.A.

Exhibit 17

instruction fetching means that are connected to said bus to fetch instruction groups via said bus from said memory, certain of said instruction groups including at least one instruction that, when executed, causes an access to an operand or an instruction or both, said operand or insruction being located [relative to] a predetermined position from a boundary of said instruction groups;

an instruction register for receiving sequential instructions from a first of said instruction groups from said instruction fetching means, said first of said instruction groups including[an operand or at least two sequential instructions or both] said at least one instruction;

instruction decoding means having a means for generating a counter control signal and an operand control signal;

a counter that is connected to receive said counter control signal from said instruction decoding means;

operand selection means that is responsive to said operand control signal from said instruction decoding means;

instruction supplying means, responsive to said counter to select said predetermined position, for supplying, in succession from said instruction register, said [operand or] sequential instructions [of said first of said instruction groups] to said central processing unit;

said instruction supplying means being further responsive to said counter and said operand selection means for selecting and supplying operands from said predetermined position in said instruction groups to said central processing unit;

said instruction decoding means providing said counter control signal and said operand control signal to cause [for configuring] said instruction supplying means to select from said instruction [register an] groups said operand or instruction or both associated with one of said instructions from said first of said instruction groups.

2 72(Four Times Amended). The microprocessor system of claim 1 71 wherein said instruction decoding means further includes means, responsive to a SKIP instruction in said instruction register, for configuring said instruction fetching means such that the next instruction group is supplied to the instruction register, and for configuring said instruction supplying means to supply in succession from said

71 instruction register, said sequential instructions, beginning with the first instruction in said instruction register from said next instruction group, to said central processing unit, and in which said means for generating the counter control signal, also in response to the SKIP instruction, supplies the counter control signal to reset said counter to zero.

72 4 74(Four Times Amended). The microprocessor system of claim 1 71 further comprising:

a loop counter that is connected to receive a decrement control signal from said instruction decoding means, said instruction decoding means further including means, responsive to a MICROLOOP instruction in said instruction register, configured to supply said decrement control signal to said loop counter, said instruction supplying means being configured to supply from said instruction register beginning with the first instruction in said instruction register, from said first of said instruction groups, to said central processing unit, and in which said means for generating the counter control signal, also in response to the MICROLOOP instruction, supplies the counter control signal for resetting said counter to zero.

73 11 82(Three Times Amended). The microprocessor system of claim 10 80 [further comprising a counter connected to said instruction supplying means, said counter providing a count signal indicative of an instruction of said subsequent one of said instruction groups that is to be provided to said central processing unit by said instruction supplying means,] in which said instruction decoding means supplies said counter control signal to reset said counter [being reset] in response to [receipt by said instruction decoding means of said] a branch-type instruction in said sequential instructions within said first of said instruction groups.

74 13 86(Amended). The microprocessor system of claim 10 80 [further comprising a counter connected to said instruction supplying means,] in which said instruction supplying means [including] includes means for gating said sequential instructions within said instruction register to said central processing unit based on signals produced by said counter.

74

16 87(Amended). The microprocessor of claim 1 71 wherein said instruction supplying means includes:

[a counter connected to said instruction decoding means,]

a decoder connected to an output of said counter, and

a plurality of gates interposed between said instruction register and said central processing unit, said gates being controlled by signals from said decoder.

75

20 91(Three Times Amended). A microprocessor comprising:

a central processing unit;

an instruction register operatively coupled to said central processing unit;

instruction fetching means for providing sequential instructions within instruction groups to said insruction register wherein certain of said instruction groups include [an operand or at least two sequential instructions or both; said operand or sequential instructions including] at least one instruction that, when executed, causes an access to an operand or an instruction or both , said operand or instruction being located [relative to] at a predetermined position from a boundary of said instruction groups;

instruction decoding means having a means for generating a counter control signal and an operand control signal;

a counter that is connected to receive said counter control signal from said instruction decoding means;

operand selection means that is responsive to said operand control signal from said instruction decoding means;

instruction supplying means, responsive to said counter to select said predetermined position, for successively coupling said sequential instructions of said certain of said instruction groups to said central processing unit; [and]

said instruction supplying means being further responsive to said counter and said operand selection means for selecting and supplying operands from said predetermined position in said instruction groups to said central processing unit; and

said instruction decoding means providing said counter control signal and said operand control signal to cause [for configuring] said instruction supplying means to select [operands] from said instruction [register] groups said operand or instruction or both associated with particular ones of said sequential instructions.

21 20
92(Three Times Amended). The microprocessor of claim 91 wherein said instruction decoding means, upon receiving a SKIP one of said sequential instructions from a current one of said instruction groups, configures said instruction fetching means to fetch a next one of said instruction groups to said instruction register, supplies the counter control signal to reset said counter to zero and configures said instruction supplying means to supply a first one of said sequential instructions.

45

23 20
94(Three Times Amended). The microprocessor of claim 91 further comprising a loop counter, said instruction decoding means, responsive to a MICROLOOP instruction within said instruction register, providing a decrement signal to said loop counter and providing the counter control signal to reset said counter to zero, and said instruction supplying means being configured to supply from said instruction register said sequential instructions, beginning with the first instruction in said instruction register, from a current one of said instruction groups, to said central processing unit.

46

24
97(Three Times Amended). In a microprocessor system including a central processing unit, memory, and an instruction register, a method for providing instructions [or] and operands from said memory [instruction register] to said central processing unit comprising the steps of:

47

providing instruction groups to said instruction register from said memory wherein certain of said instruction groups include at least one instruction that, when executed, causes an access to an operand or [at least two sequential instructions] an instruction or both, said [operands] operand or [instructions] instruction being located [relative to] at a predetermined position from a boundary of said instruction groups;

decoding said at least one instruction to determine said predetermined position;

locating said predetermined position; and

supplying, [in succession] from said instruction[register] groups, using the predetermined location, said operand or [sequential instructions] instruction or both [of said certain of said instruction groups] to said central processing unit[; and

[selecting an operand from said one of said instruction groups for use by said central processing unit].

## REMARKS

Appreciation is expressed for the courteous and helpful telephone interview granted by the Examiner on January 29, 1998 and on February 2, 1998 in response to a proposal made by the Examiner on January 28, 1998 to add the limitations of claims 74 and 94 to independent claims 71 and 91, respectively, as well as to cancel claim 97 in order to place the application in condition for allowance. In the interview, Applicants' attorney and Mr. George Shaw, a technical representative of the assignee of this application, presented claim 71 similarly as amended above as a proposal that introduces many of the limitations of dependent claim 74 into that claim, but does not limit its scope to a MICROLOOP instruction. This version also differs somewhat from the version transmitted by facsimile in a proposed amendment on January 29, 1998 as a result of realizing that some of the language formerly moved from claim 74 to claim 71 applies only in the case of SKIP and MICROLOOP instructions, and to address the Examiner's concerns expressed in the February 2, 1998 interview. As a result, the language applicable only to those instructions has been left in amended dependent claims 72 and 74.

One of the unique characteristics of the claimed processor and processing method is the locating of operands or instructions by their position within the current group of instructions, or a characteristic we call "groupedness". This characteristic is represented in the disclosure by example in various instructions that are the subject of the dependent claims.

In the January 29, 1998 interview, the Examiner desired to know where this aspect of the invention was taught in the application as filed. Claims 71, 91 and 97 now more clearly define where instructions and operands of concern are located as "a predetermined position from a boundary of said instruction groups." For

reference, the examples in the specification that support the claims as amended are cited below.

Page 29, line 9, to page 30, line 9, discuss the SKIP instruction. Specifically, from lines 30-34 on page 29 "As shown, the SKIP operation is implemented by resetting the 2-bit microinstruction counter 180 to zero on line 422 and simultaneously latching the next instruction group into register 108." The result of resetting the counter is to begin executing at the beginning boundary of the next instruction group.

Page 30, lines 10 to 36, discuss the MICROLOOP instruction. Specifically, lines 25-28 "If not zero, the LOOP COUNTER 92 is decremented and the 2 bit microinstruction counter [180] is cleared, causing the preceding instruction in the instruction register to execute again." The result of clearing the counter is to begin executing at the beginning boundary of the current instruction group.

Page 33, lines 6 to 28 discuss variable width operands associated with JUMP-type (branch) or IMMEDIATE instructions. Specifically, from lines 15-19 "This magic is possible because operands must be right justified in the instruction register. This means that the least significant bit of the operand is always located in the least significant bit of the instruction register." Thus the operand is located from the end boundary of the current instruction group. Page 42, line 6 to page 45, line 20 supplies a detailed discussion of how branches and calls and the associated variable width operands are encoded in binary.

Page 41, line 36, and page 42, line 1, indicate "Branches and calls are made to 32-bit word boundaries." These boundaries correspond to instruction group boundaries and thus branches and calls also reference instructions that are located at a predetermined position from a boundary of an instruction group.

Page 55, lines 5-25, discuss FETCH-VIA-PC. Specifically, from lines 5-14, "Fetch the 32-bit memory content pointed to by the Program Counter and push it onto the Parameter Stack. After fetching, increment the most significant 30 bits of the Program Counter to point to the next 32-bit word address. *NOTE When this instruction executes, the PC is pointing to the memory location following the instruction. The effect is of loading a 32-bit immediate operand." Thus the operand, the 32-bit memory content fetched, is located at a predetermined position from a

boundary of an instruction group, that is, the next instruction group, and fills an entire instruction group.

Page 59, lines 6-33 discuss LOAD-SHORT-LITERAL. Specifically, lines 9-12: "This instruction requires that the 8-bits to be pushed reside in the last byte of a 4-byte instruction group. The instruction op-code loading the literal may reside in ANY of the other three bytes in the instruction group." Thus, the operand for this instruction is located a predetermined position from the end boundary of the current instruction group.

The Examiner's concern of missing structure in claims 71 and 91 are believed to be resolved. This required extensive reorganization of the claims to separately detail instruction access and operand access. From claim 71:

instruction decoding means having a means for generating a counter control signal and an operand control signal;

a counter that is connected to receive said counter control signal from said instruction decoding means;

operand selection means that is responsive to said operand control signal from said instruction decoding means;

instruction supplying means responsive to said counter to select said predetermined position, for supplying, in succession from said instruction register, said sequential instructions to said central processing unit;

said instruction supplying means being further responsive to said counter and said operand selection means, for selecting and supplying operands, from said predetermined position in said instruction groups, to said central processing unit;

said instruction decoding means providing said counter control signal and said operand control signal to cause said instruction supplying means to select from said instruction groups said operand or instruction or both associated with one of said instructions from said first of said instruction groups.

Similar text was added to claim 91.

The counter 180 and operand selection means (442, 440, 180) are described in the specification at page 33, and is shown in FIG 20 to be responsive to control signals provided by the instruction decoding means.

Similarly, the more specific recitation of locating the operand or instruction a predetermined position from a group boundary and a counting step and have been

added to claim 97. The dependent claims above have been changed as appropriate to correspond to the changes in their parent claims.

Based on the interview, these changes to the claims and the above remarks, this application is believed to be in condition for allowance, and allowance is solicited. The claims as amended define subject matter not taught or suggested in the prior art and are based on the teaching in the application as filed, as discussed above.

Respectfully submitted,

COOLEY GODWARD LLP

Willis E. Higgins
Reg. No. 23,025

Five Palo Alto Square
Palo Alto, CA 94306-2155
Telephone: (650) 843-5145

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/484,935 | 06/07/95 | MOORE C | NANO-001/09U |

LM21/0213

COOLEY GODWARD CASTRO
HUDDLESON AND TATUM
FIVE PALO ALTO SQUARE
3000 EL CAMINO REAL
PALO ALTO CA 94306

| EXAMINER | |
|---|---|
| ENG, D | |
| ART UNIT | PAPER NUMBER |
| 2784 | 15 |

DATE MAILED: 02/13/98

## NOTICE OF ALLOWABILITY

**PART I.**

1. [X] This communication is responsive to amendment filed 2/6/98.
2. [X] All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.
3. [X] The allowed claims are 71-75 + 77-100.
4. [ ] The drawings filed on ______ are acceptable.
5. [ ] Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [_] been received. [_] not been received. [_] been filed in parent application Serial No. ______, filed on ______.
6. [ ] Note the attached Examiner's Amendment.
7. [ ] Note the attached Examiner Interview Summary Record, PTOL-413.
8. [ ] Note the attached Examiner's Statement of Reasons for Allowance.
9. [ ] Note the attached NOTICE OF REFERENCES CITED, PTO-892.
10. [ ] Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. [ ] Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.
2. [X] APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.
   a. [ ] Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. ______. CORRECTION IS REQUIRED.
   b. [ ] The proposed drawing correction filed on ______ has been approved by the examiner. CORRECTION IS REQUIRED.
   c. [ ] Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.
   d. [X] Formal drawings are now REQUIRED.

---

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

**Attachments:**

- _ Examiner's Amendment
- _ Examiner Interview Summary Record, PTOL- 413
- _ Reasons for Allowance
- _ Notice of References Cited, PTO-892
- _ Information Disclosure Citation, PTO-1449
- _ Notice of Informal Application, PTO-152
- _ Notice re Patent Drawings, PTO-948
- _ Listing of Bonded Draftsmen
- _ Other

DAVID Y. ENG
PRIMARY EXAMINER

PTOL-37 (REV. 4-89) *

Exhibit 18

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office

# NOTICE OF ALLOWANCE AND ISSUE FEE DUE

LM21/0213

COOLEY GODWARD CASTRO
HUDDLESON AND TATUM
FIVE PALO ALTO SQUARE
3000 EL CAMINO REAL
PALO ALTO CA 94306

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/484,935 | 06/07/95 | 029 | ENG, D | 2784 | 02/13/98 |

First Named Applicant: MOORE, CHARLES H.

TITLE OF INVENTION: HIGH PERFORMANCE MICROPROCESSOR USING INSTRUCTIONS THAT OPERATE WITHIN INSTRUCTION GROUPS (AS AMENDED)

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 2 NANO-001/09US | 395-376.000 | A48 | UTILITY | YES | $660.00 | 05/13/98 |

***THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.***

***THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.***

## *HOW TO RESPOND TO THIS NOTICE:*

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or

B. If the status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:

A. Pay FEE DUE shown above, or

B. File verified statement of Small Entity Status before, or with, payment of 1/2 the FEE DUE shown above.

II. Part B-Issue Fee Transmittal should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B Issue Fee Transmittal should be completed and returned. If you are charging the ISSUE FEE to your deposit account, section "4b" of Part B-Issue Fee Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give application number and batch number. Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

***IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.***

PATENT AND TRADEMARK OFFICE COPY

# Introduction to Electronic Circuit Design

CD-ROM INCLUDED

Richard R. Spencer Mohammed S. Ghausi



Exhibit 19

# Introduction to Electronic Circuit Design

Richard R. Spencer
*University of California, Davis*

Mohammed S. Ghausi
*University of California, Davis*

Prentice Hall
Pearson Education, Inc.
Upper Saddle River, New Jersey 07458

**Library of Congress Cataloging-in-Production Data**

Spencer, Richard
Introduction to electronic circuit design / Richard Spencer, Mohammed Ghausi–1st ed.
p. cm.
ISBN 0-201-36183-3
1. Electronic circuit design. I. Ghausi, Mohammed Shuaib. II. Title.
TK7867.S817 2001 2001021251
621.3815—dc21 CIP

Vice President and Editorial Director, ECS: *Marcia J. Horton*
Vice President and Director of Production and Manufacturing, ESM: *David W. Riccardi*
Publisher: *Tom Robbins*
Executive Managing Editor: *Vince O'Brien*
Production Editor: *Scott Disanno*
Director of Creative Services: *Paul Belfanti*
Creative Director: *Carole Anson*
Art Editor: *Xiaohong Zhu*
Manager of Electronic Composition & Digital Content: *Jim Sullivan*
Electronic Production Specialist: *Allyson Graesser*
Electronic Composition: *Karen Stephens, Jacqueline Ambrosius, Terrance Cummings, Teresa Dillon, DonnaMarie Paukovits*
Manufacturing Manager: *Trudy Pisciotti*
Manufacturing Buyer: *Lisa McDowell*
Senior Marketing Manager: *Holly Stark*
Editorial Assistant: *Jody McDonnell*

Prentice Hall

© 2003 by Pearson Education, Inc.
Pearson Education, Inc.
Upper Saddle River, NJ 07458

The author and publisher of this book have used their best efforts in preparing this book. These efforts include the development, research, and testing of the theories and programs to determine their effectiveness. The author and publisher make no warranty of any kind, expressed or implied, with regard to these programs or the documentation contained in this book. The author and publisher shall not be liable in any event for incidental or consequential damages in connection with, or arising out of, the furnishing, performance, or use of these programs.

Printed in the United States of America

10 9 8 7 6 5 4 3 2 1

ISBN 0-201-36183-3

Pearson Education Ltd., *London*
Pearson Education Australia Pty. Ltd., *Sydney*
Pearson Education Singapore, Pte. Ltd.
Pearson Education North Asia Ltd., *Hong Kong*
Pearson Education Canada, Inc., *Toronto*
Pearson Educacíon de Mexico, S.A. de C.V.
Pearson Education—Japan, *Tokyo*
Pearson Education Malaysia, Pte. Ltd.
Pearson Education, Inc., *Upper Saddle River, New Jersey*

In the first technique, called *lag–lead compensation*, a pole–zero pair is placed in the loop as shown in part (a) of the figure. The spacing between the pole and the zero is set so that it brings the magnitude response down sufficiently to achieve the desired phase margin. The frequencies of the pole–zero pair are located far enough below the next pole that the phase shift caused by the pair does not push the phase too close to −180°. (The maximum phase shift depends on the spacing between the pole and zero.) In this example, the pole was placed at 1 krad/s and the zero at 10 krad/s. The net result is that the loop gain has a cutoff frequency nearly equal to that of the uncompensated open-loop amplifier.

The *lead–lag compensation* technique is illustrated in Figure 10-73(b). In this technique, a zero–pole pair is used to produce a phase bulge that causes the unity-gain frequency to be pushed higher, where the loop gain is lower. In this example, we have also had to lower the dominant pole a small amount to achieve the 45° phase margin with 30-dB closed-loop gain. The compensation zero was set at 100 krad/s, and the pole was set at 32 Mrad/s, which causes the unity-gain crossing to occur at 562 krad/s. (The zero and pole frequencies are frequently set so that the zero crossing is halfway between them on a logarithmic plot, although this is not optimal). There is a danger in placing the compensation zero at the same frequency as one of the open-loop poles, as we have in this example. In practice, the pole–zero cancellation will not be exact, as a result of slight component variations, and the resulting closely spaced pole–zero pair may adversely affect the transient response.

## 10.2 POSITIVE FEEDBACK AND OSCILLATORS

Oscillators are an important class of circuits and are used in almost every electronic system. For example, oscillators are employed to produce the sinusoidal signals that are used as the carriers[16] for radio and television broadcasts and to produce the square waves used as clocks in computers and other synchronous digital systems.




**Figure 10–74** A positive feedback loop.

An oscillator is a circuit designed to provide a periodic output with no input signal applied; DC power is required. Oscillators depend on positive feedback to keep the oscillation going. A positive feedback loop is shown in Figure 10-74. Although we will not use an input signal, one is shown to compare the positive feedback loop with the negative feedback loop studied in the previous section and to indicate how the oscillations begin.

The output signal in this figure is given by

$$S_o = aS_e = a(S_i + bS_o), \qquad \textbf{(10.263)}$$

which leads to

$$\frac{S_o}{S_i} = \frac{a}{1 - ab}. \qquad \textbf{(10.264)}$$

The only difference between this result and the result derived for the negative-feedback amplifier in (10.2) is the sign in front of the loop gain. If the input signal is zero, the only way we can have a finite output from this circuit is for the transfer function given by (10.264) to equal infinity. The transfer function will be infinite at

[16] We call the signal a *carrier* because the information to be transmitted is used to *modulate*, or change, some characteristic of the wave (e.g., frequency modulation). The modulated sine wave can then be thought of as carrying the signal.