# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED and PATRIOT SCIENTIFIC CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> MATSUSHITA ELECTRIC INDUSTRIAL CO; LTD; PANASONIC CORPORATION OF NORTH AMERICA; JVC AMERICAS CORP.; NEC CORPORATION; NEC ELECTRONICS AMERICA, INC.; NEC AMERICA, INC.; NEC DISPLAY SOLUTIONS OF AMERICA, INC.; NEC SOLUTIONS AMERICA, INC.; NEC UNIFIED SOLUTIONS, INC.; TOSHIBA CORPORATION; TOSHIBA AMERICA, INC.; TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; and TOSHIBA AMERICA CONSUMER PRODUCTS, LLC, <br><br> Defendants. | Civil Action No. 2-05CV-494 (TJW) |

**DEFENDANT ARM'S RESPONSE**
**TO PLAINTIFFS' MOTION TO CONTINUE THE TRIAL DATE**

Defendants ARM, Inc. and ARM, Ltd. (collectively, "ARM") oppose Plaintiffs' motion to continue the trial date (the "Continuance Motion") because Plaintiffs' alleged problems are entirely self-created. Filing lawsuits in this district brings both benefits and responsibilities. One benefit is that the Court efficiently administers its dockets. One responsibility is that Plaintiffs are expected to assist the Court's efficient administration by effectively prosecuting their cases. Plaintiffs' Continuance Motion seeks to inappropriately disrupt the Court's schedule. The Court should not reward Plaintiffs' delays in prosecuting its case with a continuance.

Plaintiffs have only themselves to blame for any discovery delays. Plaintiffs filed this case on October 24, 2005. By July 1, 2007 (only 2 months from the close of discovery), Plaintiffs had not taken a single deposition. Plaintiffs' delay in filing its amended infringement contentions ("PICs") caused the present request for continuance. Plaintiffs' sent those amended contentions to defendants on December 23, 2006, but did not file their motion to amend until March 26, 2007 – a delay of over 3 months. Had Plaintiffs been reasonably diligent in filing their PICs motion, the present Continuance Motion would be unnecessary.

Moreover, the history of this case indicates that Plaintiffs are using the Continuance Motion to avoid judgment on their invalid and non-infringed claims. Plaintiffs attempt to create the false illusion that Plaintiffs' long-time refusal to pursue discovery can be blamed on any of the defendants. When ARM called Plaintiffs' bluff on its unreasonable discovery demands and complied with discovery, Plaintiffs declined both to accept ARM's documents and to depose ARM's witnesses.

ARM agrees with co-defendant Toshiba: if the trial delay is no more than two months, ARM would drop its opposition to the present motion. Further delay causes ARM significant harm because Plaintiffs continue to falsely accuse ARM's licensees of infringement. ARM

1

intervened to protect its licensees. Plaintiffs should not be permitted to use unreasonable discovery demands against other defendants to delay trial and continue their campaign of harassment against ARM's licensees.

I. **THE DISCOVERY EXCHANGES BETWEEN ARM AND PLAINTIFFS CONFIRM THAT PLAINTIFFS REFUSE TO PURSUE DISCOVERY WHEN OFFERED AND HAVE MANUFACTURED ALLEGED DISCOVERY DISPUTES MERELY AS AN EXCUSE.**

Plaintiffs' protestations of discovery delays caused by defendants are belied by the interactions between ARM and Plaintiffs. In short, Plaintiffs made unreasonable discovery demands against ARM, but ARM complied with those demands. After unreasonably forcing ARM to collect and process millions and millions of documents, Plaintiffs declined to receive those documents. After serving an enormously broad 30(b)(6) notice to ARM, Plaintiffs would not even answer ARM's letters attempting to schedule the depositions. <u>Simply put, Plaintiffs' discovery demands are a ruse to create the illusion of dispute and thus, justification for delay</u>.

A. **ARM's Responses To Plaintiffs' Discovery.**

The exchanges between ARM and Plaintiffs regarding discovery demonstrate two things: Plaintiffs demand unnecessary discovery and Plaintiffs are not really interested in using any of the discovery.

- Sep. 29, 2006: ARM identifies to TPL the documents it understands TPL reasonably needs for discovery and requests that TPL contact ARM if additional documents are needed. TPL never responds to this letter. (Exh. A)

- Oct. 27, 2006: TPL sends a letter enumerating unreasonably broad categories of documents which would result in virtually every single document at ARM being produced. (Exh B.)

- Nov. 22, 2006: ARM informs TPL of the enormous scope of TPL's demands and suggests limiting ARM's production to ARM Accused Products as such:

  ARM suggests that TPL define the "ARM Accused Products" as the ARM7, ARM9, ARM10, and ARM11 microprocessor core families. (Exh. C)

2

Dec. 7, 2006:  TPL rejects ARM's limited definition and demands a much more expansive definition:

> You have suggested that the ARM Accused Products be defined as the "ARM7, ARM9, ARM10, and ARM11 microprocessor families." **We think this definition is too narrow.** The Accused Products should also include all ARM product families that are licensed to or otherwise made available to the NEC, Toshiba and MEI Defendants, or any of them, including but not limited to**, the ARM7, ARM9, ARM9E, ARM10E, ARM11, Cortex, and SecurCore microprocessor families.**      (Exh. D)

Dec. 15, 2006:  ARM acquiesces in TPL's demand to expand the definition of ARM Accused Products but warns of the enormously expensive consequences to ARM:

> Regarding TPL's expansion of its request for technical documentation, ARM will endeavor to collect such documents.  ARM is still investigating the scope of this expansion but it is believed to be on the order of many gigabytes of data.    (Exh. E)

ARM subsequently incurred the enormous expense of collecting and offering to Plaintiffs an estimated 10 million pages – a document production that Plaintiffs then declined to accept (Exh. F).

On May 31, 2007, Plaintiffs served a 30(b)(6) notice to ARM.  On June 14, ARM responded by identifying a witness and indicating that the deposition would need to occur in the United Kingdom since the witness's wife was 8+ months pregnant and the witness could not travel.  On June 20, ARM again wrote Plaintiffs seeking to confirm the 30(b)(6) deposition dates.  On June 27, ARM again wrote Plaintiffs seeking to confirm the 30(b)(6) deposition dates (3 letters at Exh. G).  Plaintiffs did not respond to any of ARM's letters offering a 30(b)(6) witness.

**B.     The ARM / Plaintiffs Exchanges Demonstrate That Plaintiffs Seek Only To Manufacture Discovery Disputes.**

Plaintiffs' discovery demands appear not to have been designed to legitimately uncover evidence that they can use at trial.  Rather, as demonstrated by the interaction with ARM,

3

Plaintiffs are using discovery to burden the defendants with enormous costs while creating an excuse to delay the trial.

ARM found itself capable of responding to Plaintiffs' unreasonable demands. Plaintiffs' subsequent inaction demonstrates that Plaintiffs have no need – or even desire – to evaluate and use the enormous scope of discovery being demanded. Rather, Plaintiffs seek only to create discovery difficulties for the tactical advantage of being able to request delays as in the Continuance Motion.

## II.     ARM'S OBJECTIONS ARE NOT MOOT BECAUSE PLAINTIFFS SEEK TO WITHHOLD LEGAL CLAIMS TO ASSERT IN A FUTURE LAWSUIT.

Plaintiffs' brief wrongly implies that ARM's objections are moot because of an alleged stipulation which would eliminate the '584 patent. Unfortunately, Plaintiffs' proposed stipulation retains the ability to sue ARM again in the future. ARM should be entitled to a stipulation of non-infringement for all products which were, or could have been, accused of infringement. Plaintiffs' proposed stipulation only addresses products that were specifically accused and reserves the ability to bring a future lawsuit against other products. ARM's position is simple: <u>either Plaintiffs bring their claims now or they should be foreclosed in the future</u>.

One specific dispute is over the whether ARM's "Cortex" and "SecurCore" processors are included in the stipulation. Plaintiffs specifically forced ARM to collect and process documents related to these cores in an exchange between the parties:

Nov. 22, 2006:  Letter from ARM to TPL:

> ARM suggests that TPL define the "ARM Accused Products" as the ARM7, ARM9, ARM10, and ARM11 microprocessor core families.  (Exh. C)

Dec. 7, 2006:  TPL demands a much more expansive definition:

> You have suggested that the ARM Accused Products be defined as the "ARM7, ARM9, ARM10, and ARM11 microprocessor families." **We think this definition is too narrow.** The Accused Products should also include all

4

>ARM product families that are licensed to or otherwise made available to the NEC, Toshiba and MEI Defendants, or any of them, including but not limited to, the ARM7, ARM9, ARM9E, ARM10E, ARM11, **Cortex, and SecurCore** microprocessor families.     (Exh. D)

Simply put, Plaintiffs cannot legitimately force ARM to collect and process documents regarding certain products and then reserve the ability to bring a separate lawsuit on those products.

ARM's products do not infringe Plaintiffs' invalid claims.[1]  ARM should not be forced to incur unnecessary expenses defending either this lawsuit or a future lawsuit.  ARM should be entitled to include in the judgment those products for which Plaintiffs demanded discovery.  ARM will not contract or stipulate to less than what it should be entitled – no rational company would do so.  To do so would only invite the future expense of re-litigating those same products.  Accordingly, ending this dispute here and now is the appropriate course of conduct.

Plaintiffs' unreasonable stipulation raises the question:  Why are they attempting to withhold the ability to threaten ARM's products?  The answer is that Plaintiffs with to continue to make unfounded accusations of infringement against ARM's customer licensees.  Inclusion of ARM's set of products for which Plaintiffs demanded discovery into the judgment should end Plaintiffs' campaign of harassment against ARM's customer licensees.[2]  Plaintiffs may not want to stop making such unwarranted accusations, but ARM should not be forced to stipulate to anything that does not end this campaign.

If Plaintiffs accept the reasonable stipulation offered by defendants, then the '584 patent and ARM will be out of this case.  Until that point, ARM vigorously opposes any effort by Plaintiffs to delay the trial by more than two months.

---

[1] See Exh. H.  The Patent and Trademark Office recently rejected the asserted '584 claim as anticipated by 11 separate references – using Plaintiffs' own claim construction.

[2] Any continued accusations against ARM products in the face of a judgment may raise issues such as patent misuse, antitrust violations and unfair trade torts.

5

## III. THE COURT SHOULD NOT CONDONE PLAINTIFFS' REFUSAL TO PROSECUTE ITS CASE.

Plaintiffs have been the proximate cause of any delays due to discovery. Inexplicably, Plaintiffs delayed over 20 months to start taking depositions less than 2 months before discovery closed and less than 4 months before this case was scheduled for trial. Such delays are inexcusable for any Plaintiff that is properly prosecuting its case.

Plaintiffs cannot blame defendants document production for such delays. By Fall of 2006, defendants had produced many of the technical documents believed to be needed by Plaintiffs to prove their case. Even if Plaintiffs' subsequently extremely broad additional demands were good-faith requests for information, the existing production in Fall 2006 was adequate for Plaintiffs to take depositions – to be followed up with additional depositions if so needed. Plaintiffs' current position seems to be that depositions cannot commence until after production of every available document. Such a position leads to unnecessary delays. Discovery is a process of refining one's litigation position through the collection of information: it is not a process of merely collecting massive information that serves no reasonable purpose in the litigation.

The Continuance Motion was proximately caused by Plaintiffs' delays in filing their motion to amend their preliminary infringement contentions. This Court denied Plaintiffs' first attempt to amend their PICs on November 7, 2006. On December 23, Plaintiffs served defendants with a proposed new motion to amend the PICs. Plaintiffs did not file their motion to amend their PICs until March 26, 2007. Thus, Plaintiffs waited 5+ months after the Court's initial denial of amendment and over 3 months after first approaching defendants with a new amendment to the PICs.

Even accounting for negotiation with defendants after Plaintiffs' December 23 service of new PICs, Plaintiffs' delay in filing their motion is inexcusable. A reasonable plaintiff (facing a very near trial date) would have quickly brought the dispute to the Court by the end of January. Had Plaintiffs acted reasonably, the additional 2 months they now (ostensibly) seek would have naturally resulted from the January (rather than March 26) filing.

## IV. CONCLUSION

Plaintiffs have not efficiently prosecuted their case. Thus, they now ask the Court to let them off the hook. Unfortunately, Plaintiffs offer the Court no guarantee that they will use this additional time any more wisely than they have used the 21 months since the filing of this lawsuit.

ARM would agree to a 2-month delay. Plaintiffs' conduct in this litigation does not merit the apparently unbounded extension of the case that Plaintiffs now seek.

Respectfully submitted,

/s/ Michael Smith

James H. Wallace, Jr.
DC Bar. No. 016113
jwallace@wileyrein.com
Gregory E. Lyons
DC Bar. No. 436071
glyons@wileyrein.com
Kevin P. Anderson
DC Bar. No. 476504
kanderson@wileyrein.com
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 719-7000
Fax: (202)719-7049

Carl R. Roth
Texas Bar No. 901984225
cr@rothfirm.com
Michael C. Smith
Texas Bar No. 900641877
ms@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 North Wellington, Suite 200
P.O. Box 876
Marshall, Texas 75671
Tel: (903) 935-1665
Fax: (903) 935-1797

*Counsel for ARM Defendants*
August 1, 2007

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 1st day of August, 2007. Any other counsel of record will be served by facsimile transmission and/or first class mail.

_____
Michael C. Smith